UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUDITH TONAK,

      Plaintiff,                             Case No. 14-cv-10378
                                            Hon. Matthew F. Leitman

v.

KENWAL STEELE CORP., *et al*.,

      Defendants.

_____/

**ORDER DENYING (1) DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (ECF #25) AND (2) PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT (ECF #26)**

**INTRODUCTION**

In 2007, Defendant Kenwal Steele Corporation ("Kenwal") hired Plaintiff
Judith Tonak ("Tonak") as a full-time employee. Tonak served as the
administrative assistant to one of Kenwal's executives, Defendant Stephen
Eisenberg ("Eisenberg"). It appears that Tonak's duties included, among other
things, making travel arrangements for Eisenberg and his family, managing
Eisenberg's checking accounts, paying some of his personal bills, assisting with
the hiring of Eisenberg's household staff, answering Eisenberg's phone, and
running personal errands for Eisenberg. For these services, Kenwal paid Tonak an
annual salary of over $60,000, plus yearly bonuses and other employment benefits.

1

2:14-cv-10378-MFL-MKM Doc # 39 Filed 04/07/15 Pg 2 of 15 Pg ID 612

On January 27, 2014, Tonak filed this action against Kenwal and Eisenberg. (*See* the "Complaint," ECF #1.) Tonak claims that Kenwal and Eisenberg (collectively, "Defendants") failed to pay her overtime wages in violation of the Fair Labor Standards Act (the "FLSA"). (*See id.*) Following discovery, Defendants moved for summary judgment, arguing that Eisenberg is not entitled to any additional pay because she is exempt from the overtime provisions of the FLSA. (*See* "Defendants' Motion," ECF #25.) Tonak has also moved for partial summary judgment on the same issue, arguing that she is *not* exempt as a matter of law. (*See* "Tonak's Motion," ECF #26.) The Court heard argument on both motions on March 18, 2014. (*See* Dkt.) For all of the reasons stated below, the Court **DENIES** both motions.

## GOVERNING LEGAL STANDARD

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact...." *U.S. SEC v. Sierra Brokerage Services, Inc.,* 712 F.3d 321, 326–27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986)) (quotations omitted). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which [a fact-finder] could reasonably find for [that party]." *Anderson,* 477 U.S. at 252. However, summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require

2

submission to [the trier of fact]." *Id.* at 251-252.  When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.*

## ANALYSIS

### A.    The FLSA and the Relevant Administrative Exemption

Congress enacted the FLSA "to correct labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." *Keller v. Miri Micosystems LLC*, --- F.3d ---, 2015 WL 1344617, at *3 (6th Cir. Mar. 26, 2015) (internal quotation marks omitted).  Among other things, the FLSA requires "employers to pay employees overtime compensation, which must be no less than one-and-one-half times the regular rate of pay, if the employee works more than forty hours in a week." *Id.* The FLSA defines an "employee" as "any individual employed by an employer." *See* 29 U.S.C. § 203(e)(1).

Some employees, however, are exempt from the FLSA's overtime compensation provisions, and "[a]n employer may raise a plaintiff's status as an exempt employee as an affirmative defense to claims brought under the FLSA." *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 846 (6th Cir. 2012).  Such "[e]xemptions, however, are to be narrowly construed against the employers seeking to assert them." *Id.* (internal quotation marks omitted).  "The employer

bears the burden of establishing the affirmative defense by a preponderance of the evidence, and the employer satisfies this burden only by providing clear and affirmative evidence that the employee meets every requirement of an exemption." *Id.* (internal quotation marks omitted).

The exemption at issue here relieves employers of the obligation to pay overtime to those employed in an "administrative" capacity. *See* 29 U.S.C. § 213(a)(1) (the "Administrative Exemption"). The Administrative Exemption provides that "[m]inimum wage and maximum hour requirements … shall not apply with respect to … any employee employed in a bona fide … administrative … capacity." *Id.*

"Congress did not define [this exemption], but delegated authority to the Department of Labor [] to issue regulations to define and delimit [the exemption's] terms." *Foster v. Nationwide Mutual Insurance Company*, 710 F.3d 640, 642 (6th Cir. 2013). The current regulations provide that the Administrative Exemption covers employees:

> (1) Compensated ... at a rate of not less than $455 per week ...;
>
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

*Id.* (quoting 29 C.F.R. § 541.200(a)(1)-(3)). An employer seeking to invoke the Administrative Exemption must establish all three of these factors by "clear and affirmative evidence." *See, e.g., Orton*, 668 F.3d at 846.

Another regulation sheds some light on the meaning of the terms "discretion" on "matters of significance":

> In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term "matters of significance" refers to the level of importance or consequence of the work performed.
>
> The phrase "discretion and independent judgment" must be applied in the light of all the facts involved in the particular employment situation in which the question arises.

29 C.F.R. § 541.202(a)-(b).

Finally, a third regulation gives some guidance concerning the circumstances under which an administrative assistant may fit within the Administrative Exemption: "An executive assistant or administrative assistant to a business owner or senior executive of a large business generally meets the duties requirements for the administrative exemption if such employee, without specific

5

instructions or prescribed procedures, has been delegated authority regarding matters of significance." 29 C.F.R. § 541.203(d).

## ANALYSIS

### A.   Defendants Are Not Entitled to Summary Judgment

The parties agree that Tonak was paid over $455 per week, and that she therefore satisfied the first prong of the Administrative Exemption. However, Defendants have not shown with "clear and affirmative evidence" that, *as a matter of law*, Tonak satisfied the other two prongs of the exemption: that her work "directly related to the management or general business operations of [Kenwal] or [Kenwal's] customers" and that her primary duties "include[d] the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(2)-(3). Simply put, when the evidence is viewed in the light most favorable to Tonak, it does not establish that her work directly related to Kenwal's operations or customers nor that her primary duties included the exercise of discretion on matters of significance.

> **1.    A Reasonable Fact-Finder Could Conclude, After Viewing the Evidence in Tonak's Favor, that She Did Not Perform Work Directly Related to Kenwal's Operations or Customers**

The evidence in the light most favorable to Tonak does not establish, as a matter of law, that her work *directly* related to Kenwal's "management or general business operations of [Kenwal] or its customers." 29 C.F.R. § 541.200(a)(2).

Rather, that view of the evidence is sufficient to establish that Tonak's work related only indirectly to Kenwal's operations or customers.

Eisenberg's own testimony, when viewed in Tonak's favor, makes this very point. Indeed, Eisenberg testified that Tonak's job was to free him up so that *he – not* Tonak – could attend to Kenwal's management and general business operations. Eisenberg explained that he wanted his assistant to "take any responsibilities off [his] plate *that could allow [him]* to focus on … his responsibilities within the company." (Eisenberg Dep., ECF #27-2 at 23-24, Pg. ID 360; emphasis added.) Eisenberg further described Tonak's duties as taking "care of [him and] tak[ing] care of the responsibilities that would alleviate [his] time" so that *he* could focus on Kenwal's business operations. (*Id.*) Eisenberg's testimony, viewed in the light most favorable to Tonak, could support a finding that Tonak *did not* perform work that affected Kenwal's business operations:

> Q: Did she perform work that affected the business operations of Kenwal Steele to a circumstantial degree?
>
> A. Since that's what I do – and my time is valuable to do those responsibilities. *By her doing her respon*sibilities, *that allows me to be able to do those responsibilities, and that I would not be able to get them done.* So while she may not make a decision on an inventory buy, she allows me the time to be able to make that decision by handling [her] responsibilities.

7

(*Id.* at 62, Pg. ID 366; emphasis added).

Moreover, Tonak's description of her work, taken in the light most favorable to her, supports a conclusion that her work related only indirectly to Kenwal's operations or customers.   For example, Tonak, testified that she managed Eisenberg's personal credit card bills, membership dues, insurance policies, and mortgage payments (*see* Tonak Dep. at 41, Pg. ID 124); reconciled his personal expenses (*id.* at 47, Pg. ID 125); helped hire Eisenberg's household employees (*id.* at 49-52, Pg. ID 126); assisted in the preparation of his personal tax returns (*id.* at 55-56, Pg. ID 127); and made travel arrangements for Eisenberg and his family (*id.* at 56, Pg. ID 127.)   Tonak also testified that she managed Eisenberg's sporting event tickets, including selling unused tickets online or distributing them to friends of Eisenberg.   (*Id.* at 57-59, Pg. ID 128.)   When viewing these tasks in the light most favorable to Tonak, a fact finder could reasonably conclude that none of them relates directly to Kenwal's business operations.   Defendants therefore have not shown that Tonak satisfied the second prong of the Administrative Exemption as a matter of law.

Defendants contend that the decision of the United States Court of Appeals for the Fourth Circuit in *Altemus v. Fed. Realty Trust*, 490 Fed. App'x 532 (4th Cir. 2012), supports their assertion that, as a matter of law, Tonak's work directly related to Kenwal's operations or customers.   According to Defendants, in

8

*Altemus*, "[t]he plaintiff testified that performing the CEO's personal tasks required 75 to 80 percent of her time," and that the "fact that the plaintiff spent the majority of her time performing personal work for the CEO did ***not*** affect the court's analysis that she was properly classified as exempt under the FLSA's administrative exemption." (Def.s' Br., ECF #25 at 19, Pg. ID 102; emphasis in original). The Defendants mis-read *Altemus*. In that case, the district court and the Fourth Circuit both specifically *rejected* the plaintiff's assertion that she spent so much time on the CEO's personal matters. *See Altemus*, 490 Fed. App'x at 536 ("Moreover, despite Altemus' attempts to create an issue of material fact with respect to the nature of her work, the district court correctly concluded that Altemus' self-serving affidavit was unsupported by the record, which includes ample evidence of her business-related duties as the sole executive assistant to the CEO of a large company"). Because both courts *declined* to accept the plaintiff's claim that she spent 75% of her time on her employer's personal tasks, *Altemus* does not stand for the proposition that an administrative assistant fits within the Administrative Exemption even if she, in fact, spends 75% of her time on her employer's personal matters. The courts in *Altemus* simply never addressed that circumstance.

**2.      A Reasonable Fact-Finder Could Conclude That Tonak Did Not Act With Discretion and Independent Judgment on Matters of Significance**

The Defendants have not established that, as a matter of law, Tonak "exercise[d] of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a)(3).  The evidence, when viewed in the light most favorable to Tonak, is sufficient to establish that Tonak did not perform any of the tasks typically associated with the exercise of discretion over significant matters.  The applicable regulations provide as follows:

> Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to: whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. 541.202(b).  Eisenberg testified that Tonak's job included *none* of the responsibilities listed in the regulation.  (*See* Eisenberg Dep. at 63, Pg. ID 366.) And, while an employee may qualify as exempt even if she does not satisfy *all* of the factors listed in the regulation, Defendants have not identified a single case in which an administrative employee was found to be exempt as a matter of law despite satisfying *none* of them.  Moreover, both Eisenberg and Tonak's testimony, when viewed in Tonak's favor, is sufficient to establish that Tonak did not truly exercise discretion because she followed a set of procedures dictated in advance by Eisenberg and/or neither made, nor significantly impacted through recommendations, any of Kenwal's decisions. (*See* Eisenberg's Dep. at 23-39, Pg. ID 360-364; *see also* Tonak Dep. 138-139, Pg. ID 148.)

Viewing the evidence in the light most favorable to Tonak, there is a material factual dispute regarding whether she had discretion over matters of significance.  Thus, Defendants are not entitled to summary judgment on their affirmative defense that Tonak falls under the Administrative Exemption.

## C.    Tonak is Not Entitled to Partial Summary Judgment

Tonak has moved for partial summary judgment on the Administrative Exemption.  (*See* Tonak's Motion, ECF #26.) According to Tonak, because Defendants "cannot establish [the requirements of] the administrative exemption," Defendants should not be able to raise this affirmative defense at trial.  (*Id.* at 1,

11

Pg. ID 298.)   But when the evidence is viewed in the light most favorable to Defendants, a reasonable fact-finder could conclude that Tonak *was* exempt from the FLSA overtime provision.  Tonak is therefore not entitled to partial summary judgment.

The evidence, when viewed from the Defendants' perspective, includes an important acknowledgement by Tonak that she *was* exempt from the FLSA.  More specifically, when viewed in favor of Defendants, the evidence could establish the following: that Tonak was well-trained in human resources; that she had a professional certification in Human Resources Management (*see* ECF #25-5 at 3, Pg. ID 210); that she was educated in "wage and hour law" (*see* Tonak Dep. at 14, Pg. ID 117); that she obtained a "Generalist Certification" from the Society of Human Resources Management (*id.* at 16, Pg. ID 117); and that she prepared (or adopted) a job description which stated that her position was "exempt" from the FLSA.  (*See* ECF #25-6 at 3, Pg. ID 213.)  A reasonable fact-finder, viewing the evidence in Defendants' favor, could attach evidentiary significance to Tonak's determination – made in light of her experience in human resources and with wage and hour laws – that her position was exempt from the FLSA.

Indeed, a reasonable fact-finder could regard Tonak's statement that she *was* exempt as an acknowledgment that her duties *did* directly relate to Kenwal's operations or customers and that she *did* exercise discretion on significant matters.

12

Tonak's own assessment of her position as exempt – viewed in favor of Defendants – is sufficient to preclude a finding that, as a matter of law, Tonak was not exempt. While Tonak may be able to neutralize the job description at trial (by, for example, saying she did not draft it, or that she did not focus on the statement that she was exempt), for purposes of Tonak's Motion, the Court must accept the statement at face value.[1]

Moreover, Tonak's own description of her duties and responsibilities, when viewed in Defendants' favor, is not substantially different from the duties and responsibilities of the administrative assistant in *Seltzer v. Dresdner Kleinwort Wasserstein, Inc.*, 356 F.Supp.2d 288 (S.D.N.Y.) – in which the federal court held that the assistant *was* exempt *as a matter of law*. Given that an administrative assistant with similar duties (such as answering an executive's phone and managing his personal bank account) has been found to be exempt as a matter of law, this Court is hesitant to conclude that Tonak is *not* exempt as a matter of law. Adding to this Court's reluctance is the fact that Tonak has not been able to cite a single decision holding – either as a matter of law on summary judgment or after a

---

[1] For the purposes of this Order, the Court is not treating Tonak's listing of her position as "exempt" in the job description as a waiver of Tonak's claim for overtime pay nor as her agreement with Kenwal that she was foregoing overtime pay even though she was otherwise entitled to it under the FLSA. Instead, as described in detail above, the Court is treating Tonak's use of the term, when viewed in Defendants' favor, as evidence that she believed her job duties included discretion on matters of significance and related to Kenwal's business operations or customers.

full trial – that an administrative assistant like her is not exempt from the FLSA's overtime requirements. Whether Tonak is covered by the Administrative Exemption is a matter properly left for decision following a trial.

### D. The Possible Role of Estoppel

As the Court indicated to the parties at oral argument, the Court has questions as to whether Tonak may be equitably estopped from denying that she is covered by the Administrative Exemption. The estoppel defense, if available to the Defendants, could potentially proceed as follows: (1) Tonak represented that she believed herself to be exempt from the FLSA overtime provisions; (2) Defendants, who also believed her to be exempt, relied to their detriment on her representation that she concurred in their assessment that she was exempt; (3) that reliance took the form of continuing to employ her at a high salary and giving her substantial loans and gifts on the understanding (at least in part) that she was properly classified as exempt and would not be seeking additional overtime compensation; and (4) Defendants' detrimental reliance warrants estopping Tonak from now claiming that she is not exempt. The Court does not know if this theory of defense is available to the Defendants either as a legal or factual matter, nor does the Court know whether the estoppel defense could potentially proceed on some other factual predicate. The Court's questions about this defense, however,

14

give the Court further pause about ruling on the applicability of the Administrative

Exemption as a matter of law.

The Court directs the parties to address the estoppel issue in their trial briefs

to be submitted prior to trial and in their proposed conclusions of law.

## CONCLUSION

For all of the reasons stated above, Defendants' Motion for Summary

Judgment (ECF #25) and Tonak's Motion for Partial Summary Judgment (ECF

#26) are both **DENIED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  April 7, 2015


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 7, 2015, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113